Chaviano v. Ripa 25-12153 Mr. Prada here for the appellant, Mr. George for the appellees. No hurry. Mr. Prada, whenever you're ready. May it please the court, the claim brought in this case falls within the core of habeas. It is protected by the suspension clause. The challenge is that this person cannot be detained under 1225B1. The only way that detention can be authorized is if the process behind 1225B1 is lawful because in immigration law, a special justification for civil detention is the procedure of processing a claim and seeking to deport someone if their claim fails at the end of the day. If someone is no longer being held on the sole basis that you're challenging the validity and authorization for being held on that basis, if that person's not being there, does that not moot exactly the basis of your habeas petition? I've spoken with opposing counsel about this. Their position now is that it's 1225B1, the section requiring mandatory detention while the asylum applicant- But this wasn't a mandatory, you have that appeal in a bunch of other places. You're now trying to rewrite, this is my problem, is you're trying to rewrite your habeas petition to be ones that you have now filed in a bunch of other cases and you're going to have oral argument as I understand later this month on that very issue. I'm sorry. Am I right? The B2 issue, ACLU is arguing that I think in two weeks, but we're still in B1. My only point is you brought this habeas petition, let's be clear about exactly what you sought, and if you, I'll paraphrase it, but if you need me to, I can quote it five times from your habeas petition. You sought to challenge the validity and authorization to hold someone under the expedited removal process, correct? Yes, and that process has extinguished because they're now past the credible- So there's no, at least on the basis that you brought your habeas petition, that is done, correct? That's half of the issue. No, no, I mean, we can talk about half, but counsel- That part's done, yes, your honor, that part's done. And that's it. I don't, let me read you from the petition. This is page two. Respondents lack the authority to arrest and detain under the expedited removal statute, its implementation regulations, and the constitution. He seeks a writ of habeas corpus from this honorable court. Page 14, traditional habeas review is available here not to address the adequacy of expedited removal, but whether he is legally subject to expedited removal in the first place. Page 18, traditional habeas review is available here to resolve not the adequacy of the expedited removal process, but whether it is legally subject to the expedited removal process in the first place. Page 19, petitioner is entitled to a writ of habeas corpus ordering his immediate release from custody due to his clear improper designation as an alien described under 8 U.S.C. Section 1225B1A little 3, 2. So on and so forth. That's the entire petition. And so, are you telling us that your client is no longer being held pursuant to that statute? If I may. His current detention, per the government, is based under the 1225B1 provision. It is still part of the expedited removal statute, which allows continuing mandatory detention because he was subjected through this process. So our argument is that the process was never legal to begin with, and so his current detention, which is based on the fact that he did go through the process, we think is still unlawful because he never should have been in that process. So is this B1, big B, little 2? If the officer determines at the time of the interview that an alien has credible fear of persecution, the alien shall be detained for further. Yes, exactly. We move from B1, B34 to B1, B2. I just want to be clear. This is from the February 11th, 2026 letter that the government filed, not responded to. Petitioner is now in proceedings under 8 U.S.C. 1229A and no longer in expedited removal proceedings, period. True or not true? That is true. But the question is about the underlying basis of detention, right? So there was some confusion because I was not sure whether the government was asserting a B1, B2 detention or if it transferred to B2A in our discussions. That wasn't the petition. The petition is, and this is, I've had this issue with you. We end up coming to an oral argument on a different case than was litigated below. And that is exactly what we have here. What was litigated below was I am being held. I am now subject to this expedited removal process. It requires mandatory detention. I am attacking the validity and authorization of my, of them seeking expedited removal as to me. Now it's, I'm not subject to expedited removal. I am not in expedited removal. I'm in 1290, 1229A, which allows me full due process, exactly what I wanted from the beginning. But now I am arguing something else. You may have a habeas petition as to what you're saying. I'm not disputing that you don't have a habeas right. I'm just saying that's not the case that was litigated at all. How is that not the definition of mootness? We did not voluntarily cede some sort of action. I agree with that. So we are not the cause of the mootness. I agree with that. The purported mootness. It's just, at the end of the day, the suspension clause, we need to look at the root of the detention. Now, just because the detention is shifting from one statutory provision to another, which are both still under the expedited removal. It's that I am not being held under the same basis I was being held when I filed my petition. That's, that is what we're talking about here. And I, it, again, it may be that you have a habeas right, but the second that you're no longer being held under the very basis that we're here for, you have a different suspension clause argument, assuming that you're prohibited from bringing a habeas action. Assuming mootness, mootness works differently in habeas. It's more flexible. We have to look if there's still an ongoing collateral consequence, if I'm quoting correctly from the Supreme Court cases. I don't recall the name right now, but I've had this before. He's still being detained. We are challenging the detention. He is still being detained. I know, but give me, let's take a hypothetical. Two criminal cases, one in the Southern District of Florida, one in the Middle District of Florida. The sentence for one runs concurrently to the sentence for the other, or I'm sorry, consecutively to the sentence for the other. But he's serving his sentence in Coleman in the same space for both sentences. So he's in one, he has an appeal from one, he has an appeal from the other. While the appeal for number one in the Southern District of Florida is pending, he finishes his sentence. There's no supervised release, and there's no collateral consequences. He now is serving, he's in the same exact place, held by the federal government, but now under a different judgment. Is that not first appeal moot? Yes, and the reason for that is because the detention stems from two different criminal proceedings, whereas here, this case still stems from the same original charging document of the expedited removal process. No, it doesn't. He's saying he's not being held under expedited removal. I'm going to ask the government this when they're up there, but their letter says he is now in 1229A and not in expedited removal. Your Honor, another notice that there is a new habeas petition in district court right now where the U.S. Attorney's Office argued that it's 1225B1B2. So in your client's case? Yes, the same client, it's actually with the same district judge again. You did file a new habeas? A prolonged detention, because we're arguing now that his detention without bail hearing has been unconstitutionally prolonged. It's been briefed. We're waiting for an order. But there, the government argued that it was 1225B1B, because there was some confusion because the immigration judge did say B2A in the bond denial, so again, I don't want to speak for my colleague here, but my understanding is that the government's current position is that it's 1225B1. I guess my concern suddenly, as I'm watching this unfold, is that I had thought, frankly, that the government would come up to the podium and say, look, never mind, this is effectively moot because he's going to be mandatorily detained pursuant to B2A, right? And then my response would be, no, no, no, the habeas petition runs to the judgment pursuant to which he has been, you know, sort of the statutory process pursuant to which he has been detained. But now you're telling me that the statutory process pursuant to which he had been detained is no longer the statutory process to which he is being detained. So it's like the flip side of what I thought was going to be the weakness of the government's position, now I worry is the weakness of your position. I'm sorry, I think there might be a little confusion. So B1 has at least two, and I think three provisions for mandatory detention within it, the expedited one. B2 is for cases that were never an expedited removal, right? So B2 cannot apply when they're trying to do expedited removal. Yeah, I mean, I guess what I was saying is that I thought the government might come in and say, look, because he got this credible fear determination, now he's over in 1229 and he's effectively outside expedited removal, and so he's, but don't worry, he's going to be mandatorily detained under B2A. So 1229 is not a detention provision, right? I understand. So 1225B1 is interesting because it is both a detention and a procedural provision under all its subsections. B2 is a detention provision which works with 1229, which is a procedural. Yeah, right. They're two different worlds.  Right? And so we're still within the B1 framework because when you start off at the original removal order under B1A, you must be detained because you're supposed to be removed. If you make a fear claim, you move to B1B34, you're making your fear claim. If you succeed, you move to B1B2 where you're presenting your asylum application with the judge. So that's where he is. He's on step three of the chain of detention. So what's weird is that he's still within 1225B1, but at least the government's letter suggests that he's no longer in what we would call expedited removal proceedings. So I guess, I guess foolishly perhaps, I had been thinking that B1 was like the expedited removal. No, so Jennings versus Rodriguez actually explains this, right? That third step of where you're having the asylum application, the regulations then did it through a removal proceeding. It doesn't have to. In fact, the regulations today give the department the option of a very streamlined version of not a removal proceeding. And actually, there's been regulations over there, I think the last eight years, trying to take that third step and take it out of removal proceedings and just do an asylum application only type of proceeding. The government- Is it a removal proceeding? Is it not? Yes, but that is the- And he has an asylum claim pending. And the administration judges can decide removal and asylum. So the statute- Isn't that, that's what the law would require the judge to do. The regulations require that, not the statute. I know, the regulation. That's the way it's supposed to be handled. Yes. You have a removal proceeding and an asylum claim. He's already had the administrative examination about the asylum, so he's now in an asylum claim. Yes. And the reason why it's in the vessel of a removal proceeding is because the regulations offer that. But the underlying detention and the underlying statutory process is the 1225B1B2. So and I understand this is very complicated and the court is familiar with immigration law and probably doesn't get expedited removal cases, maybe ever. I don't think the government would dispute my characterization of what's happening. So is your point, is the nub of your point that his continuing mandatory detention stems from his placement originally in the expedited removal process, which you say was never properly triggered to begin with? Exactly. Exactly. Yes. That's why we believe it's not moved. Okay. All right. Let's see what the government has to say. Thank you. May it please the court, Matthew George for the Attorney General and the other respondents. I think I mostly agree, if not entirely agree, with what Mr. Prada set out in terms of the procedural posture now. It is a little unusual because the detention statute does become sort of detached. And when I learned when Mr. Prada filed the 28J that he... Is it true that he is now in proceedings under 8 U.S.C. section 1229A and no longer in expedited removal proceedings? Yes, Your Honor. Is it true, as Judge Joe Flatt says, that now that's the case, there's now an immigration judge who will determine his removal status and asylum claim? That is my understanding, that he is in just traditional 1229A or 240. He'll be ultimately reviewed in the Court of Appeals, the BIA and then the Court of Appeals. That's my understanding of how it will work, yes, Your Honor. Isn't that a very different posture than we were in when you, I don't know if you were the one who originally litigated this, but when you guys were in front of Judge Damien about last summer, this past summer? In terms of, I guess, some of the claims, yes. What's some? The claim is one. There's only one claim. I guess in terms of removal and relief, yes. What about in terms of detention? What is the source of his ongoing mandatory detention? That I think is the big... Okay, hold on. If I can get an answer to that question. He filed a 2241, which said to the government, why am I being held? What's the authority? That's when he filed it. And the authority when he filed it was? Then it was under the expedited removal statute. It's 1225. Under removal statute.  1225. Yeah. I don't remember. 31A, I think. Yeah, I think that's at that time. But it was, that proceeding was dismissed, was terminated. Yes, because the immigration judge found that he had a credible fear. I understand. And now he's in a regular removal statute. Yes, Your Honor. So for purposes of habeas corpus, let's suppose it's a floating application. It moved, the reason for the detention change was there, and it's simply been changed because he's now in a removal proceeding. Yes, Your Honor. So the government's response in habeas corpus is we're holding him under the, under the removal proceedings. No. We're holding him, he's being detained pending the removal proceeding. He is being detained for the removal proceedings. Yeah, that's what I mean. However the... And for the asylum application. Right. But he's being detained, just tell me if I've got this right, he is being detained for the removal proceedings, but he's being detained pursuant to a statute that attached because he was originally an expedited removal person. Correct?  Yes, Your Honor. So if that's all right, and their contention is, hey, never should have been subject to that statute because the proper determination wasn't made within the required two years, why isn't the continuing mandatory detention habeas-able, let's say? Well, for the same reasons that the original claim wouldn't be habeas-able or reviewable, because Congress has said you can't review those. Okay, so now we're in suspension clause land. Right. So why is that not a suspension clause violation? Well, if there's no way for him to challenge in habeas the authority by which you are mandatorily detaining him, which you've said, look, A for candor, you said this is not a B2A case or A2B, whatever the thing the Fifth Circuit's dealing with. This is a B1B2, right? But the only basis for his ongoing mandatory detention is the fact that he was originally subject to expedited removal proceedings. And they say he never should have been subject to expedited removal proceedings. And you say, tough noogies, you can't challenge that in habeas. And I say, why is that not a suspension clause violation? Well, the biggest thing is because he's not asking for simple release. What does that mean? I don't even understand what that means. Well, I'll explain it in terms of this case. And I think the Castro case out of the Third Circuit, which the Supreme Court cites in I'm not sure any of us cited it, but it's Castro versus DHS, it's 835 F3rd 422, really goes through the history and the basis for, and there it was very similarly situated individuals. It was individuals apprehended very shortly after coming into the United States. And that's the same situation we have here. I realized DHS at that time in 2022- Law required that he be detained the minute he was apprehended. Correct, Your Honor. Then we'd sort of be in the- That was classic. There's just nothing new about that. Correct, Your Honor. Just at that time in 2022 when he was- And he could have been paroled if he had been properly examined and so forth and so on. And in fact- Exactly. Pending the removal proceedings. He was not paroled. Sorry, I'm using the wrong terminology, but was released. Yes, on recognizance. And so that's really the wrinkle in this case is that at that time, rather than detain him, rather than choose the expedited removal route, DHS chose the 240 proceedings, the 1229- What's the difference between release on recognizance like bail and released on parole? My understanding is it was always parole. Well, parole- It required the authorities to run an investigation and determine whether or not he should be set free, as it were. Right, exactly, Your Honor. Parole would require more of findings and a decision on that basis. But they didn't do that. They didn't do that here. No. Can I ask you a question? What was the jurisdiction for the- The recognizance? Yeah, the recognizance. I'd never heard of that before. That's a good question, Your Honor. And some of that has been subject to litigation. I think that came out of thin air. Right, basically. Probably because of the overwhelming problems on the authorities. That usually was the policy or procedure. Because if there's no authority to do that, there's no authority to pick it back up again under that. I don't know- It's not like releasing somebody on their own recognizance who's supposed to be at a hearing. Right. You follow me? Right. It is a little different than maybe a criminal. If you don't have the power to do that, you don't have- never should have been released in the first place. Right. But because sort of on that point, there were- That happened. Right, that did happen. That's why we're here. Then he files a 2241 petition. Well, in the interim, I think it's important to note that this wasn't just a DHS's entire discretion to go to change the way the procedure or the proceedings happened. They had to go into immigration court and ask- Had to be there ultimately. Right. I think there's no dispute. I mean, I don't think there's any dispute that he is- Because he asked for asylum. Right. He asked for asylum right away. Or he said he was going to seek asylum. I don't know if he filed an asylum application between 2022 and 2025. Not until he- No, but didn't he tell the immigration authorities that he was going to seek asylum? At what point? In 2022 or 2025? No, before- Yeah, initially. I don't recall what he said at that point. Well, then when did the first time asylum raise its head? Right. I think that was the goal, I assume, in those original proceedings between 2022 and 2025. Okay. Was to pursue whatever relief- He raised the point at that point. Yes, he would have- It became a removal proceeding with an asylum application. Well, it was a removal proceeding. It was a notice to appear, yes. Okay. I understand. Judge Luck has a question. I'm sorry. Yeah. So now we're in 1229A land. Do you agree with that? In terms of removal, yes. Right. Okay. And as Judge O'Fladd mentioned, there's an immigration judge and that judge has power over the removal and the asylum application, correct? Yes. Does that judge also have the authority- your opposing counsel intimated this, but I want to clarify it- have authority over release and bond issues pending those things? Yes. Okay. So there's a judge, actually, who can hear the release issue, right? He already did. Okay. We heard. And he actually is holding under a different provision than the one that we're talking about here. Yet another interesting mootness- I agree. All right. That is appealable, is it not, to the BIA? The bond decision? The whole thing. The whole package at some point is an appealable thing in a process through the 1229 regular removal process that we're all very familiar with, right? Yes. And that goes to BIA and then what goes to the circuit court, right? Yes. And- This court. And as I understand it, the Supreme Court and our court has blessed that process for suspension clause purposes. Oh, yes. Right. That would be our argument if we were in that boat, is that is an adequate substitute for habeas. So in other words, now that we're in this, your opposing counsel laid out the three-step process. I know I need it explained to me exactly how this works, but now that we're in the third step process, because he's now funneled into 1229A, there is a traditional process where you're able to challenge all of these things, including, hey, I'm being held pursuant to all of this, right? Yes, Your Honor. Then is there a suspension clause issue? I mean, that's one road to say that there isn't. And essentially, 1229A proceedings is the remedy under what Congress has provided for review of in the expedited review. Right. In other words, even if we were to sort of jump through all the hoops that Congress had laid out in the expedited removal process, the end result would be just to- The 1229A. You go into 1229A where there's more process. Yes. And as I cited, at least the D.C. Circuit has said that release is ultimately a possibility at the end of that, at some point in that whole 1229A process. And so that's why it's an adequate substitute. Okay. I want to go back to the mootness point that I put a pin on a minute ago. So just to be clear, this is now in 1229 land, 1229A land. There is an immigration judge assigned. That immigration judge has issued an order which says, petitioner, Mr. Echaviano, you are being held pursuant to this provision. Yes, your honor. Is that provision the one that we've been talking about this whole time? The immigration judge cited 1225B2A, which is what I think Judge Newsom had alluded to. The one that we're going to be- The big one. The one that we're going to be arguing about later-  Next month. Yes, your honor. This seems like a next month case and not a right now case. Is it not? That's one way to go. Well, I'm looking for the right way, counsel. And I appreciate that there's different roads that we can take and you want to just win. And I get that. No, I mean, I think it's an open question about what is the detention system. Well, one is a mootness issue. Well, how is it an open question? If we all agree on these principles, he is now in the third step of expedited removal that requires that he be in 1229A. 1229A has an established process. That process includes a detention determination by the immigration judge. That has happened here. And he has said, the immigration judge, he or she has said, he is being- Mr. Chaviana is being held under this provision. Yes. How is that disputable? How is that? How can we now say, no, I'm ignoring that. We're, in fact, holding them under something else. I don't have a good answer for you other than what the position my client has taken in the new habeas. The difficulty is that your client is a unitary thing. Like, you don't get to tell us that he's being held under B1, B2. And then somebody else tell us collectively that he's being held under B2A. Because if he's being held under B1, I'll just shorten that. If he's being held under B1, then that's the thing that Congress has stripped jurisdiction of anyone to hear on review or otherwise. And then you've got this namby-pamby habeas thing that doesn't cover this, you know, sort of habeas right that doesn't cover this claim, right? So if he's being held under B1, then he's SOL and maybe there's a suspension clause issue. If he's being held under B2A, then we're in, as Judge Lott says, next month land. So it kind of matters, like what the source of the detention is. And I want to add one other wrinkle too. I agree with everything Judge Newsom said. But one of the wrinkle is part of that unitary executive, as we all know, is the immigration judge. The immigration judge is the official entity that decides these things. So I guess answer Judge Newsom's question with my sort of caveat in there. And then I would just add to that, I think you need to tell us in some document that is filed what the official position of the United States government is on what is being held. Because I think that matters. I absolutely agree with that. I'm glad to do that. Has a removal proceeding been commenced? What do you mean by commenced? Has an administrative law judge convened a removal proceeding or will convene? Yes. There's a notice. A new notice to appear was issued. And that is the authority. Right now, he's being held for 2241 purposes. I mean, the government has his body, as it were. And they have his body because he did a removal proceeding that's ongoing. Is that not the case? That is the case.  So the suspension clause problem is gone. Well, maybe. Maybe. If he's being held pursuant to B2A, the suspension clause problem may be gone because Congress hasn't reported a stripped jurisdiction to hear those cases, those kinds of cases. But if he's in B1B, then the suspension clause problem may be back. I think to Judge Lugg's point, we need something like a framed, signed document from you telling us what the authority of his ongoing detention is. Right. The question I have is whether or not... When the petition was filed, okay, on one theory, we now have another theory. He's in a removal proceeding. Whether or not deciding whether the initial detention was valid under 2241 would be moot. Or be a provisional ruling. I'll say it as a provisional ruling.  Yes. Can I just explore one last thing?  I just want to be clear. You mentioned... So there is a new notice to appear, what we often call an NTA. And that is the... As I understand it, and again, I admit my ignorance on immigration law, that is the charging document, correct? Yes, Your Honor. And that is a different charging document than the one that he was originally on when he filed the habeas, correct?  Okay. I'll just say really quick, I mean, it's sort of supposed to happen by operation of law once the immigration judge finds credible fear. Essentially, the expedited removal proceedings are canceled and they must issue a new NTA. Understandably, because you're in a different proceeding. All right, Mr. Prada. Three minutes to make all of this perfectly understandable. Okay. So Judge Luck, I think it would be like when a complaint is filed and is later converted to a grand jury indictment is what's sort of the analogy here, but it's still the same idea. Ruling on the complaint would be provisional, wouldn't it? Under Article III, courts can't issue provisional orders, which may evaporate. I'm sorry, I may not follow the question. What I'm trying to say is about the charging document, right? You're drawing the analogy to a complaint and an indictment. Well, like for example, when somebody, and I'm not a criminal attorney, so maybe I have this wrong, but a person is brought in and a complaint is sworn out and that's the beginning of a process. They're in custody. Yes, and that's the beginning of a process and then the grand jury must issue a bill of indictment. And is your argument that you could challenge the complaint? No, I mean, I can't speak. Well, no, you could, but the reason the court couldn't resolve the question is because it would be provisional. I would admit to the court that I am very ignorant of criminal procedure. Like an adversary ruling. Yeah, yes. I mean, a hypothetical ruling. Well, if I may, I think one of the things is that we need to separate the proceeding from the detention authority here. Can I ask you just about the detention authority? Yes. If Mr. George comes back to us with the framed signed document that says, in fact, the position of the United States is that he's being held pursuant to A2, am I getting that? The other one, the other one. B2, yes. B2A, not B1. Does the suspension clause problem evaporate? I understand you might have lots of other arguments. The jurisdictional bars in the statute wouldn't apply to that anymore, right? So then we would actually be able to go to the merits without having to deal with any suspension. Right, yeah. That would be this big messy thing that the Fifth Circuit's dealt with, and it sounds like we're about to deal with. So you'd have other arguments, but you wouldn't have a suspension clause argument. Yes, and I would just say in a reply briefly brought up in Jennings how B2 detention ends. So perhaps this person was subject to B2 at the border at the time of removal, but when they dismissed the proceedings, they concluded the whole thing. And Jennings, to avoid the outcome that this is indefinite detention, said no, it's not detention indefinite, because that detention ends when the proceeding concludes. So the government concluded the proceeding by dismissing the full removal proceeding to then go into this expedited removal proceeding. So our position is that to the extent there was any B2 detention, they ended it. They tried to go into B1, and we said we can't do that. The only option is 1226A, where you can request bond. And yes, that is a question for next month, maybe in two weeks, I think. I think the hearing was advanced. But habeas is flexible, and I would... And section 2243 says the court, if I may continue. Yeah, just finish up. The last sentence of section 2243 is that the court... All injustice may require. Exactly. In a summary fashion, and this court itself has the power to issue the writ under 2241. And I think the court has the authority to treat everything that has happened as a proper amendment to the petition in its discretion and to rule. And we would ask that you please do so. Okay. Thank you, Your Honor. What he really is after, he wants to have his asylum claim heard and decided. What I... That's collateral. He wants to be out of jail. If he succeeds there or under the Convention Against Torture, he can stay in the United States. Yes, and he would also like to apply for adjustment under the Cuban Adjustment Act. That's another step. Yes. Altogether. Yes, but that's a separate issue from the detention. It's a whole separate issue from the asylum issue. And the detention. Yes. All right, so here's what we're going to do, because a lot sort of hit the fan of the argument in this case. So let's... We'll issue an order, but it will be something like this. We'll direct the government to point us to the source of authority to the ongoing mandatory detention of your client. And tell us why you think that matters, how you think that matters to the claims at issue in this case. And then we'll ask you shortly thereafter to respond. Is that fair? Yes. Thank you, Your Honor. Fair? Okay, good deal. All right, that case is submitted. Well done on both sides. That was a lot. Thank you. We are in recess until tomorrow morning at 9 a.m.